**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BOARD OF TRUSTEES OF THE GREATER PENNSYLVANIA CARPENTERS' MEDICAL PLAN, Plaintiff, <br><br> And, <br><br> WILLIAM SCHWARTZMILLER, Consolidated Plaintiff <br><br> v. <br><br> WILLIAM SCHWARTZMILLER and LISA SCHWARTZMILLER, Defendants, <br><br> And, <br><br> GREATER PENNSYLVANIA CARPENTERS' PENSION FUND and CARPENTERS' COMBINED FUNDS, INC., Consolidated Defendants. | Civil Action No. 17-1442 <br> Senior Judge Nora Barry Fischer |

## <u>MEMORANDUM OPINION</u>

### I.     INTRODUCTION

This consolidated ERISA action returns to the Court to adjudicate contested motions for attorneys' fees and costs filed by Defendants William Schwartzmiller ("William") and Lisa Schwartzmiller ("Lisa") against Plaintiff, the Board of Trustees of the Greater Pennsylvania Carpenters' Medical Plan ("Medical Plan"), following the Court's determination that the Schwartzmillers entered into a valid common law remarriage in October 1993 and dismissed the Medical Plan's claims against them, with prejudice.  (Docket No. 102).  The motions have been exhaustively briefed and supplemented with affidavits and other documentary evidence.  (Docket Nos. 107-110; 112; 119-124; 126-127; 132-136; 142; 145; 147).  Pursuant to Rule 78(b), the Court

does not believe that oral argument is necessary and proceeds to rule on the submitted briefs.  After careful consideration of the parties' positions in light of the discretion afforded to the Court, and for the following reasons, Lisa's motions [107] [127] [142] are granted and William's motion [113] is denied.

II.     BACKGROUND

Because the Court writes primarily for the parties and has fully set forth the facts of this matter in its prior Memorandum Opinion, which is incorporated herein, the Court recounts only those facts necessary to the disposition of the Schwartzmillers' separately filed motions seeking attorney's fees and costs against the Medical Plan.  (*See* Docket No. 102).  The Schwartzmillers pursue fees and costs based upon the Court's dismissal, with prejudice, of the Medical Plan's ERISA claims for repayment of medical benefits provided to Lisa at times when she was allegedly divorced from William, pursuant to the parties' stipulation.  (Docket Nos. 107; 113; 127; 142). William's ERISA claims against consolidated Defendants Greater Pennsylvania Carpenters' Pension Fund ("Pension Fund") and Carpenters Combined Funds, Inc. appealing the denial of a conversion of his pension from a 75% joint and survivor annuity to a single life annuity based on his alleged divorce from Lisa were also dismissed, with prejudice, under the parties' stipulation. (Docket No. 103).  However, those entities have not filed a similar motion seeking attorney's fees and costs from William.   *See* Docket Report at Civ. No. 17-1442.

Briefly, the Court conducted a one-day bench trial and resolved the contested dispute between Lisa and William by finding that they entered into a valid common law remarriage under Pennsylvania law in October 1993.  (Docket No. 102).  Lisa asserted that she divorced William in 1992 and that they formed a common law remarriage when they reunited in October 1993.  William claimed that he did not know about the couple's 1992 divorce and therefore could not have been a

party to the October 1993 remarriage.  The Court held that Lisa demonstrated by clear and convincing evidence that she and William entered into a valid common law remarriage in October of 1993, expressly credited Lisa's version of events over William's and made adverse credibility findings against William.  (*Id*. at 23-27).  Specifically, the Court accepted Lisa's emotional testimony concerning the difficulties in their young marriage caused by William's selfish behavior and substance abuse problems which led her to kick him out twice and divorce him as well as the later events culminating in their remarriage, including an intervention, William's completion of a rehabilitation program and his promises to be a better husband and father.  (*Id*.).  In rejecting much of William's testimony, the Court held that "William demonstrated a lack of candor at times when it would benefit him financially, including stating that he was 'divorced' on a September 11, 2014 disability application with the Pension Fund at a time he believed he was still married to Lisa so that he would receive increased disability payments and a larger lump sum payment for retroactive benefits" and that "[h]is recollection of certain events was also unclear, uncorroborated by other evidence, inconsistent and implausible."  (*Id*. at 3-4).

The evidence presented to the Court showed that William, as the Union member, controlled the applications for benefits with the Medical Plan and Pension Fund as he filled out the forms and interacted with staff.  (Docket No. 102 at 4, 8-9).  There was no evidence offered showing that Lisa was involved with the Union or staff on any of the applications.  (*Id.*).  It is also doubtful that William would have deferred to Lisa in these matters given the Schwartzmillers' demeanor and interactions at the hearing which likewise showed that William controlled much of their relationship and that William's history of poor decisions left Lisa burdened with a mountain of problems he had created.

Although the Medical Plan and Pension Fund declined to actively participate in the bench

trial by presenting evidence or questioning the Schwartzmillers' witnesses,[1] the Court commented that the pleadings and documentary evidence showed that those entities had taken inconsistent positions with respect to whether the Schwartzmillers were divorced or had entered into a subsequent common law remarriage. The Court pointed out this inconsistency because the Medical Plan, Pension Fund and Carpenters Combined Funds are related entities. (Docket No. 36 at 7, n.1). James Klein ("Klein") is the administrator of all of these entities. They are all located in the same physical office and use the same employee identification forms to name beneficiaries. The Plans are also fiduciaries required to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). The Plans are further expected to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

Klein was involved with the matters underlying this litigation prior to the claims being filed in federal court. To that end, the record reveals that in March of 2017, he spoke with William's initial attorney, James Paulick, Esq., concerning both William's claim for a single life annuity against the Pension Fund and the Medical Plan's potential claim against him for recovery of medical benefits extended to Lisa. (Docket No. 102). Klein was also included as follows:

- he was copied on correspondence from attorneys representing the Medical Plan and Pension Fund prior to this litigation, (Jt. Exs. 10; 17; 22);
- he was consulted on the parties' stipulations resulting in the disposition of these matters, (Docket No. 65);
- he served as the party representative for ADR purposes; and,

---

[1]     The Court notes that counsel for the Medical Plan and Pension Fund appeared and observed the entirety of the proceedings from the courtroom. (*See* Docket No. 102 at 1 and further discussion, *infra*).

- he submitted an affidavit regarding the attorney's fees and costs sought by the Schwartzmillers.

As the Court detailed in its Memorandum Opinion, after Paulick's initial conversation with Klein,

> William's pursuit of a retroactive single life annuity continued and Paulick drafted a letter on his behalf to Pension Fund Administrator Klein dated March 31, 2017. (Docket No. 91 at 53-55, 121-22; Ex. 10). In the letter, Paulick references his prior discussion with Klein regarding a claim against the Pension Fund for "monies [William] believes are owed to him now that he has discovered that he was divorced at the time of applying for his benefits." (Ex. 10). He attached the 1992 divorce decree and claimed a total cash payment of $19,239.55 representing the difference between the benefits he received and those he believed he was entitled under a single life annuity and to change his election from the 75% pop-up joint and survivor annuity to the single life annuity. (*Id.*). The Pension Fund denied William's claim in an April 7, 2017 letter sent by its counsel JoAnne Mineweaser, Esq. of Tucker Arensburg. (Ex. 22). The letter detailed how to appeal the decision. (Ex. 22). Paulick testified that the denial was "expected." (Docket No. 91 at 12-23). However, since these types of ERISA claims were not Paulick's area of expertise, he worked with William to find him new counsel to represent him in the appeal and his current counsel was engaged shortly thereafter. (*Id.* at 54-55, 123-24).
>
> On August 15, 2017, William filed an appeal, through counsel, [John Stember, Esq.] to the Pension Fund claiming that Lisa had deceived him regarding the finalization of the divorce. (Ex. 16). He argued that Lisa was never qualified [nor] eligible to be a beneficiary of the 75% pop-up joint and survivor annuity and, as before, argued that he was entitled to retroactive benefits and a change of the election to the single life annuity. (*Id.*). While the appeal was pending, the Medical Plan sent correspondence to William dated October 11, 2017, through its own counsel, Stephen J. O'Brien, Esq., seeking reimbursement for medical benefits provided to Lisa between 1992 and 2012. (Ex. 17). The Medical Plan demanded a lump sum payment of $52,890.78 computed by multiplying the number of months coverage was provided by the COBRA rate for the plan during the relevant years and threatened a lawsuit if the payment was not made. (*Id.*). William did not respond to this communication and the Medical Plan filed the instant lawsuit against William and Lisa on November 6, 2017. (*See* Docket No. 1).

(Docket No. 102 at 16-17).

The original Complaint against the Schwartzmillers made similar allegations to the demand letter, asserted two ERISA claims for violations of the plan and equitable relief, and state law claims for fraud and unjust enrichment.  (Docket No. 1).  The Medical Plan ultimately sought to recover $52,890.78 for reimbursement of medical and prescription benefits on behalf of Lisa for the period from 1992 to 2012, on the theory that Lisa and William failed to notify the Medical Plan of the divorce and she was not entitled to continued coverage subsequent to the divorce decree. (*Id.*).  There is no evidence in the record that Lisa was contacted by the Medical Plan or its counsel prior to the lawsuit being filed.[2]  (Jt. Ex. 17 (October 11, 2017 letter from S. O'Brien to J. Stember stating "[a]dditionally, please provide us with Lisa Schwartzmiller's last known address so that she may be notified as she is also responsible to reimburse the Plan."));  Docket No. 108-2 at 2-3 (nonresponsive interrogatory answer detailing events prior to suit).

William's appeal to the Pension Fund was still pending.  One week later, on November 13, 2017, the Pension Fund denied William's appeal in another letter from attorney Mineweaser.  (Jt. Ex. 18).

> In its specific reasons for denial, the Pension Fund noted that section 5.10(f)(2) of the Plan prohibited William from changing the election of a 75% pop-up joint and survivor annuity or his designation of Lisa as a beneficiary after he started receiving benefits payments. (*Id.*).  The Pension Fund added that if the election were changed that Lisa may have a claim against it and that she "could assert a claim for survivor benefits based on a common law marriage theory." (*Id.*).  The letter continued:

---

[2]    Indeed, the record reveals that Lisa first spoke to William's counsel, Stember, after the Medical Plan's original Complaint was filed and she was referred to her current counsel, James Carney, Esq. based on a conflict of interest.  (Docket No. 121-2 at 3 (time entries related to discussions and correspondence between Lisa and J. Stember); 91 at 177 ("Q. [Stember] Okay. And just by way of background, you and I met at the beginning of this case; do you remember? A. [Lisa] By phone, yes. Q. [Stember] And we decided that there was a conflict and we'd help you find Mr. Carney? A. [Lisa] Yes.").

> In Pennsylvania, there is a rebuttable presumption in
> favor of a common law marriage based on sufficient
> proof of cohabitation and reputation of marriage
> prior to January 2, 2005 where the parties are
> otherwise disabled from testifying regarding words
> of present intent. Since Mr. Schwartzmiller and Lisa
> Schwartzmiller cohabited, had children, and held
> themselves out as married subsequent to the divorce
> in 1992 and prior to January 2, 2005, Lisa
> Schwartzmiller would likely be able to meet the
> presumption of a common law marriage, absent any
> testimony by Mr. Schwartzmiller to the contrary.

> (*Id.*).  The letter noted that there were no additional levels of appeal
> but that William could file an action against the Pension Fund under
> ERISA if he disagreed with this decision.  (*Id.*).

(Docket No. 102 at 17).  The Pension Fund's ruling enabled Lisa to retain the spousal survivor

benefit under William's pension.

Returning to the Medical Plan's lawsuit, Lisa and Carney entered into a contingent fee

agreement whereby he did not charge her for services rendered but they agreed that he would seek

an award of fees from the Court under ERISA.  (Docket No. 109 "**Fees and Billing Statement:**

**We will not charge you for our services but rather request the Court to award fees against the**

**Plaintiff as provided for under ERISA**")).  Carney commenced work on Lisa's behalf in January

of 2018 and their relationship has continued throughout this case.  (Docket No. 109-1).  The

Schwartzmillers responded to the Medical Plan's original Complaint by separately moving to

dismiss under Rule 12(b)(6).  (Docket Nos. 10; 15).  The motions were fully briefed by the parties.

Of note, the Schwartzmillers argued that the Medical Plan had failed to plead that it had paid any

claims for medical or prescription benefits on behalf of Lisa during the relevant time period and

also challenged the computation of restitution damages using the COBRA rate.  (*Id.*).  On April

16, 2018, this Court entered an Order directing the Medical Plan to file an Amended Complaint

and denied the motions to dismiss, as moot.  (Docket No. 35).  In so holding, the Court found that

the Medical Plan had improperly relied upon facts outside the pleadings in opposition to the motions, attached an incorrect version of the plan to its Complaint and not sufficiently set forth its fraud claims with particularity. (*Id.*).

The Medical Plan submitted its Amended Complaint on April 30, 2018 providing additional factual allegations and exhibits as attachments, including an earlier version of the plan. (Docket No. 36).  The Medical Plan reasserted its ERISA claims for violating the plan and equitable relief, federal and state common law claims of fraud and unjust enrichment.  (*Id.*).  But, it acknowledged that the prior allegations concerning the time period when Lisa was provided coverage were erroneous and caused it to change its theory of recovery, while also reducing the amounts claimed.  (*Id.*).  As counsel explained, "[t]he Plan initial[ly] sought recovery from the Defendants as contained in the Original Complaint in this matter for the time period directly after their divorce from September 23, 1992 to March 31, 2012 when Defendant Lisa Schwartzmiller's coverage ceased. Additional research of Plan records, however, reveals that Defendant Lisa Schwartzmiller was not on Plan coverage until February 1, 1998."  (Docket No. 36 at 10, n.2). Hence, the Medical Plan's theory of recovery shifted to claiming that Lisa was not entitled to coverage when she became a beneficiary in 1998 due to the earlier divorce.  (Docket No. 36).  With respect to the benefits paid on her behalf, the Medical Plan alleged that it paid claims for medical services "in 1999, 2000, 2001, 2009, and 2012 totaling $2,020.35."  (Docket No. 36 at ¶ 67 (citing Ex. 10)).  However, the Medical Plan continued to seek reimbursement at the COBRA rate for coverage which it now estimated as $36,312.39 for the period of February 1, 1998 to March 31, 2012, but was considerably less than the initial claim of $52,890.78.  (*Id*. at ¶ 69).

The Schwartzmillers once again moved to dismiss, setting forth preemption defenses and reasserting their legal challenges to the COBRA rate of recovery pursued by the Medical Plan.

8

(Docket Nos. 39; 44).  The motions were again fully briefed.  (Docket Nos. 39-40; 43-49).  On August 9, 2018, the Court denied the motions to dismiss, without prejudice, because "Defendants largely raise affirmative defenses to Plaintiff's claims (such as preemption) and challenges to the amount of damages which require further development of the record to be decided by the Court and it is not clear from the face of Plaintiff's Amended Complaint that it has failed to state plausible claims for relief under the alternative theories advanced here."  (Docket No. 50 (citations omitted)).  After the Schwartzmillers' Answers were filed, the Court held a case management conference, established a discovery schedule, and extended the time period to complete discovery at their request.  (Docket Nos. 52; 54; 59; 62-63).  For good cause shown, the Court deferred ADR initially until the completion of discovery and again until after William's lawsuit against the Pension Fund was consolidated and the bench trial was held on the common law marriage issue.  (Docket Nos. 57; 64).  The relevant procedure as to the bench trial is detailed in the prior Memorandum Opinion but consisted of pre-hearing trial briefs, joint exhibits and witness lists as well as post-hearing briefing.  (Docket No. 102 at 19-20).

As noted, the Court ruled that Lisa and William formed a valid common law remarriage in October of 1993.  (Docket No. 102).  In accordance with ¶ 14 of the parties' stipulation, the Court dismissed the Medical Plan's claims against the Schwartzmillers, with prejudice, and dismissed William's claims against the Pension Fund, with prejudice.  (Docket No. 103).  The stipulation also provided at ¶ 15 that "[n]otwithstanding anything else in this Stipulation, including the dismissal of any claims with prejudice, the Parties agree and consent that the Court shall retain jurisdiction to determine if any Party is entitled to attorneys' fees and costs under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*."  (Docket No. 75).

Following the Court's decision and the stipulation, Lisa submitted a bill of costs and has

moved for attorney's fees, updating the motion several times with additional information as the litigation continued. (Docket Nos. 104; 106; 107-110; 112; 127; 142). Lisa seeks $610.97 in costs and $80,392.50 in attorney's fees based upon a rate of $450/hour for Carney's work and 178.65 hours claimed. (Docket No. 142). Carney's requests are supported by his curricula vitae, his own declaration, and detailed billing statements. (*Id.*). Lisa has presented affidavits of J. Michael Jarboe, Esq. and Walter P. Forest, III, Esq. attesting to the reasonableness of Carney's hourly rate and the work he performed. (*Id.*). William also moves for attorney's fees and costs and has provided updated information as well. (Docket Nos. 113; 114; 115; 133). He seeks $3,099.74 in expenses and a total of $63,121.50 in fees, of which $56,842.50 is attorney's fees for work performed by Stember, at a rate of $550/hour and the remainder is for work performed by law clerks and paralegals at a rate of $130/hour. (Docket No. 133; 133-2). The attorney's fees are supported by Stember's curricula vitae, his declaration, and detailed billing records. (*See* Docket No. 133). He has also presented the declaration of Timothy O'Brien, Esq. attesting to the reasonableness of the hourly rate and the fees claimed. (Docket No. 133-5).

The Medical Plan opposes the motions, arguing that the Schwartzmillers are not eligible to recover fees and costs and that the Court should otherwise decline to exercise its discretion to award fees and costs in the amounts claimed. (Docket Nos. 122; 123; 124; 134; 135; 136). The Court has permitted extensive briefing on the issues. While the briefing was ongoing, the Court referred the matter to early neutral evaluation ("ENE") but the case was not resolved. (Docket Nos. 137; 139; 141). After the ENE failed, the Court granted leave for supplemental briefs, which were then submitted by Lisa and the Medical Plan. (Docket Nos. 145; 147).

As all briefing has concluded, the motions are now ripe for disposition.

III.    LEGAL STANDARD

> In our legal system, each litigant typically pays his or her own
> attorney's fees, whether they win or lose. *See Brytus v. Spang & Co.*,
> 203 F.3d 238, 241 (3d Cir. 2000). However, some statutes provide
> an exception that shifts payment of one party's legal fees to the other.
> *Id.* at 242. ERISA is one such statute, providing that "the court in its
> discretion may allow a reasonable attorney's fee and costs of action
> to either party." 29 U.S.C. § 1132(g)(1).

*Templin v. Indep. Blue Cross*, 785 F.3d 861, 864–65 (3d Cir. 2015).  The United States Court of Appeals for the Third Circuit has set forth a two-part test to establish a party's entitlement to an award of fees and costs in ERISA actions. *Templin*, 785 F.3d at 864.  First, the Court must find that the moving party is eligible for such an award by showing "some degree of success on the merits." *Id.* (quoting *Hardt v. Reliance Standard Life Ins.*, 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010)).  Second, the Court must evaluate each of the following five factors from *Ursic v. Bethlehem Mines*, to determine if it should exercise its discretion to grant or deny fees:

> (1)    The offending parties' culpability or bad faith;
> (2)    The ability of the offending parties to satisfy an award of
>        attorneys' fees;
> (3)    The deterrent effect of an award of attorneys' fees against
>        the offending parties;
> (4)    The benefit conferred on members of the pension plan as a
>        whole; and
> (5)    The relative merits of the parties' positions.

*Id.* (quoting *Ursic*, 719 F.2d at 673). These factors are flexible guidelines, and no single factor is determinative, but each must be considered. *Glunt v. Life Ins. Co. of N. Am.*, Civ. A. No. 11-3105, 2012 WL 895512 at *2 (E.D. Pa. Mar. 16, 2012). "'[T]he amount of a fee award is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous.'" *Templin*, 785 F.3d at 867 (quoting *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 329 (3d Cir. 2011)).

IV.     DISCUSSION

As noted, the parties dispute the Schwartzmillers' eligibility for fees and costs, the balancing of the five *Ursic* factors, and the reasonableness of the fees and costs claimed.  (*See* Docket Nos. 107-110; 112; 119-124; 126-127; 132-136; 142; 145; 147).  The Court now evaluates their arguments as to each issue, in turn.

    *A.  Step One - Some Degree of Success on the Merits*

The Schwartzmillers maintain that they are eligible for fees and costs because they achieved some degree of success on the merits given that the ERISA claims brought by the Medical Plan seeking reimbursement for Lisa's medical and prescription coverage were dismissed, with prejudice.  (Docket Nos. 108; 114; 126; 132; 145).  The Medical Plan counters that the parties' stipulation served as the basis for the dismissal, rather than the Court's decision finding that they entered into a valid common law remarriage.  (Docket Nos. 123; 134; 147).  The Medical Plan points out that the Schwartzmillers unsuccessfully sought to dismiss this action pursuant to Rule 12(b)(6) and its claims were permitted to proceed to discovery.  (*Id*.).  It adds that William also opposed Lisa's claim that they had entered into the common law remarriage such that he lost the primary issue which was litigated in this case.  (*Id*.).

In this Court's estimation, Lisa and William demonstrated that they achieved some degree of success on the merits regarding the Medical Plan's ERISA claims seeking reimbursement.  The Court further believes that William's position opposing the common law remarriage is better considered in the context of the *Ursic* factors below, rather than with respect to the threshold determination of his eligibility for fees.  As the Court of Appeals has held,

> the ERISA statute does not limit fee awards to the prevailing party.
> The Supreme Court specifically held that a claimant need not be a
> 'prevailing party' to be eligible for an attorney's fees award under
> ERISA. *Hardt*, 560 U.S. at 254, 130 S.Ct. 2149. Instead, "a fees

> claimant must show some degree of success on the merits before a
> court may award attorney's fees under § 1132(g)(1)." *Id.* A party
> satisfies this requirement if a "court can fairly call the outcome of
> the litigation some success on the merits without conducting a
> 'lengthy inquir[y] into the question whether a particular party's
> success was 'substantial' or occurred on a 'central issue'." *Id.*
> Conversely, "[a] claimant does not satisfy that requirement by
> achieving trivial success on the merits or a purely procedural
> victory...." *Id.* (internal quotation marks omitted).

*Templin*, 785 F.3d at 865. Under the statute, fees are available "without a formal court order" or a judicial decision in a party's favor. *Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 687, n.8, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). Further, "the fact that [a party] prevailed through a settlement rather than through litigation does not weaken [his or] her claim to fees." *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Indeed, fees may even be awarded "to a losing party" if the standard is otherwise met. *Perelman v. Perelman*, 793 F.3d 368, 376-77 (3d Cir. 2015). To that end, it is enough to show that a party's "litigation efforts resulted in a voluntary, non-trivial, and more than procedural victory that is apparent to the court without the need to conduct a lengthy inquiry into whether that success was substantial or occurred on a central issue." *Templin*, 785 F.3d at 866.

Applying this standard, the Court holds that both Lisa and William are eligible for an award of fees and costs pursuant to § 1132(g)(1). Simply put, the Medical Plan sued them under ERISA for reimbursement of medical and prescription benefits for Lisa and those claims were dismissed, with prejudice. (Docket No. 103). This is not a hollow, procedural victory, but the ultimate result sought by the Schwartzmillers in defending the claims, i.e., to not pay any money, (either the $52,890.78 sought in its original Complaint or the reduced amount of $36,312.39 in the Amended Complaint), to reimburse the Medical Plan for benefits extended to Lisa. *See Templin*, 785 F.3d at 866. The fact that the dismissal was achieved based on the parties' stipulation and the Medical

Plan's stated desire to no longer litigate these issues, rather than a ruling on a motion to dismiss or summary judgment, is of no moment.  *See Perelman*, 793 F.3d at 377 (finding that actions taken by opponent consistent with relief sought in complaint sufficed even though they "were done in an effort to get rid of the case").  The cases advocated by the Medical Plan, i.e., *Staats v. Procter & Gamble Long Term Disability Allowance Plan*, 2012 WL 3705000 (W.D. Pa. Aug. 27, 2012) and *Zacharkiw v. Prudential Ins. Co. of Am.*, 2012 WL 551639 (E.D. Pa. Feb. 21, 2012), are non-binding District Court decisions, and factually distinguishable because each involved plaintiffs seeking attorney's fees after the voluntary dismissal of their own lawsuits.[3]  Overall, the Court holds that the controlling standard from the U.S. Court of Appeals for the Third Circuit dictates that the Schwartzmillers achieved some degree of success on the merits given the totality of the facts and circumstances in this litigation.  *See e.g.*, *Templin*, 785 F.3d at 866; *Perelman*, 793 F.3d at 377.

*B.  Step Two - Ursic Factors*

Since the Schwartzmillers are eligible for fees, the Court moves on to the next step to evaluate each of the five *Ursic* factors to determine whether to exercise its discretion to award fees and costs.  *See Templin*, 785 F.3d at 868 ("District courts are required to consider each of the *Ursic* factors.").  The Court largely analyzes the Schwartzmillers' claims together but diverges, as necessary, to explain the significant differences in their cases.

1.  Weighing of *Ursic* Factors

*a.  The Medical Plan's Culpability or Bad Faith*

"The first *Ursic* factor concerns the offending party's culpability or bad faith."  *Templin,*

---

[3]     The Court notes that the Medical Plan incorrectly states that the *Zacharkiw* matter is a case from the U.S. District Court for the Western District of Pennsylvania when that case was decided by the U.S. District Court for the Eastern District of Pennsylvania.  (*See* Docket No. 123 at 9).

785 F.3d at 868.   This factor focuses on the conduct of the party against whom fees are sought and the Court must consider the offending party's conduct throughout the entirety of the litigation. *Id.* "A party is not culpable merely because it has taken a position that did not prevail in litigation. In a civil context, culpable conduct is commonly understood to mean conduct that is 'blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault,'" *McPherson*, 33 F.3d at 256-577 (quotation omitted), such as a breach of fiduciary duty, *Tomasko v. Ira H. Weinstock, P.C.*, 357 Fed. App'x 472, 477 (3d Cir. 2009).   Stated another way, "[c]ulpable conduct is 'reprehensible or wrong' but need not involve 'malice or a guilty purpose.'" *Templin*, 785 F.3d at 868 (quoting *McPherson*, 33 F.3d at 257).

It is this Court's opinion that the Medical Plan acted culpably in bringing this ERISA action and continuing to pursue it through the stipulation and dismissal for several reasons.   First, the Medical Plan owed a fiduciary duty to the Schwartzmillers to act in a reasonably prudent manner in pursuing and litigating this case and the prevailing caselaw teaches that fiduciaries pursuing such actions are limited to seeking relief authorized by the terms of the plan.   *See Minerley v. Aetna, Inc.*, 801 F. App'x 861, 866–67 (3d Cir. 2020) (quoting *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013) ("29 U.S.C § 1132(a)(3) 'countenances only such relief as will enforce the terms of the plan or the statute,' reflecting 'ERISA's principal function: to protect contractually defined benefits.'"); 29 U.S.C. § 1104(a), *supra*.   However, the Medical Plan's original Complaint contained significant errors asserting objectively baseless claims for reimbursement of benefits at times when Lisa was not even covered by the plan.   *See e.g., Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 17-4600 (FLW), 2019 WL 4635482, at *3 (D.N.J. Sept. 24, 2019) (quoting *Monkelis v. Mobay Chem.*, 827 F.2d 935, 937 (3d Cir. 1987) ("pursuing an ERISA claim that 'is clearly frivolous on the

merits' suffices to support a finding of culpability within the meaning of the first *Ursic* factor.")). In this regard, the Medical Plan initially alleged that Lisa became a beneficiary of the plan prior to 1992 and sought $52,890.78 in reimbursement damages from the Schwartzmillers, including approximately $16,000 for the period of 1992 to 1998. (Docket No. 1). The Medical Plan asserted that the Schwartzmillers committed fraud by failing to notify them that they were divorced in 1992 and for continuing to claim medical benefits for Lisa when she was no longer eligible. (*Id*.). However, the Medical Plan later admitted that a post-suit investigation of its own records showed that: (1) William stated that he was divorced on an employee benefit identification form in November of 1992; (2) Lisa did not become a beneficiary until 1998; and, (3) the Medical Plan had paid only $2,020.35 in claims on her behalf during the time she was a beneficiary from 1998 to 2012. (Docket No. 36 at 7, n.1). Further, the Medical Plan's original Complaint contained additional errors in that it relied upon the wrong version of the plan which was not effective until December 31, 1999, well after the Schwartzmillers' 1992 divorce and Lisa being added as a beneficiary in 1998. (Docket No. 28).

Second, the Medical Plan failed to act with the required diligence because it admits that it filed this lawsuit without reviewing all of its own records and therefore did not conduct a sufficient pre-suit investigation to determine when Lisa was covered by the plan or the other pertinent facts noted above. (Docket No. 36 at 7, n.1). As far as the Court can glean from the record, the decision to file the lawsuit on November 6, 2017 was part of a legal strategy to counter William's pension appeal where he was claiming that he only recently became aware of his divorce. (Docket No. 124 at ¶¶ 9, 10, 15). To that end, the timeline of events makes clear that the Medical Plan sent a demand letter to William on October 11, 2017 and then filed this lawsuit three weeks later, prior to the Pension Fund resolving the appeal and without contacting Lisa. Since there was no other

16

need for the lawsuit to have been filed with dispatch, such as an expiring statute of limitations, it appears that a more thorough pre-suit investigation should have been conducted, as is required under the rules.  *See* FED. R. CIV. P. 11(b)(3) ("By presenting to the court a pleading, […]--an attorney […] certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: […] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.").

Third, the Medical Plan owed a duty of loyalty to act fairly and honestly toward its beneficiaries but continued to pursue its ERISA claims by filing an Amended Complaint <u>after</u> the Pension Fund separately denied William's pension appeal, leading to these related entities taking inconsistent positions as to whether Lisa was entitled to benefits as William's spouse.  (Jt. Ex. 18; Docket No. 36).  As the Court commented at the hearing, the Carpenters' Union was essentially "talking out of both sides of [its] mouth" with related entities taking competing positions on the Schwartzmillers' marital status in separate actions. (Docket No. 91 at 210).  Indeed, the Pension Fund's ruling permitted Lisa to retain a survivor benefit in William's pension as his spouse and stated that she "would likely be able to meet the presumption of a common law marriage" because they "cohabited, had children, and held themselves out as married subsequent to the divorce in 1992 and prior to January 2, 2005." (Jt. Ex. 18).  Despite same, the Medical Plan pressed forward with its assertions that Lisa was ineligible for medical benefits because the Schwartzmillers were divorced in 1992.  (Docket No. 36).

Fourth, the Medical Plan wrongly argues that only the Court could resolve the parties' dispute as to whether the Schwartzmillers had entered into a common law remarriage or not.  To the contrary, the Medical Plan filed this lawsuit seeking reimbursement from the Schwartzmillers

and Rule 41(a)(1) permits a plaintiff to voluntarily dismiss a lawsuit against some or all parties at any time before a motion for summary judgment is filed.  *See* Fed. R. Civ. P. 41(a)(1).  The plain terms of the Medical Plan also permitted beneficiaries to be added as common law spouses. (Docket No. 36-1 at 27).   Thus, the Medical Plan always had the ability to evaluate the documentary evidence and deposition testimony obtained during discovery and reach the same conclusion that the Pension Fund did three years ago that Lisa was likely to prove that the couple had a common law remarriage and drop its claims.[4]   Additionally, the Medical Plan's counsel observed the bench trial and the evidence presented to the Court and could have made the same determination at that time.  As explained in the prior Memorandum Opinion, this was not a close case as the Court easily credited Lisa's version of the disputed events over William's incredible testimony that he did not know he was divorced in 1992 or remarried in October 1993.  (Docket No. 102).

Viewing these circumstances collectively, the Court concludes that the Medical Plan acted culpably during this litigation by: bringing meritless claims; conducting a deficient investigation of its own records prior to initially filing the case; taking inconsistent positions as to the Schwartzmillers' marital status with the related Pension Fund; and, insisting on a judicial ruling to resolve a dispute which could have been handled out of court.  *See* Templin, 785 F.3d at 868; *see also* McPherson, 33 F.3d at 256-57. Although there has not been a showing of malice or bad faith, by the Medical Plan, "this case does not appear to involve a simple lapse of judgment or care." McPherson, 33 F.3d at 258.  The Medical Plan owed fiduciary duties to the Schwartzmillers to act in a reasonably prudent manner but instead acted in ways that multiplied the litigation, causing

---

[4]     The Court further notes that this case seeking reimbursement for medical benefits paid on behalf of Lisa could have been resolved through an ADR session with an experienced neutral.  Here, the parties deferred ADR until after the Court's ruling that the Schwartzmillers had a valid common law remarriage at which time they participated in an ENE with Sally Griffith Cimini, Esq. but the case was not settled.  (Docket Nos. 57; 78; 137; 141).

them, and particularly Lisa, to incur costs and fees which could have been avoided.  *See id; see also Tomasko*, 357 Fed. App'x 472, 477.  Such actions were contrary to the dictates of Rule 1 "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.; *Cf. Employer Trustees of W. Pennsylvania Teamsters & Employers Welfare Fund v. Union Trustees of W. Pennsylvania Teamsters & Employers Welfare Fund*, No. CV 18-1112, 2021 WL 345841, at *26 (W.D. Pa. Feb. 2, 2021) ("If the Trustees are truly concerned about the welfare of the Fund, they would be well served to try to resolve future disagreements in a less expensive and more prudent, constructive, and cost-efficient manner.").  Accordingly, the first *Ursic* factor favors an award of costs and fees.

### b.   *The Relative Merits of the Parties' Positions*

For convenience, the Court next considers the fifth factor, wherein it must evaluate "the relative merits of the parties' positions."  *Ursic*, 719 F.2d at 673.  "This factor 'overlaps with that of the first factor,' such that, when an offending party is found to have 'behaved culpably, this factor is likely to favor a fee award[.]'"  *Atl. Plastic & Hand Surgery, PA*, 2019 WL 4635482, at *5 (quoting *Surdi v. Prudential Ins. Co.*, 08-225, No. 2009 U.S. Dist. LEXIS 61191, at *16, 2009 WL 536443 (D.N.J. Mar. 3, 2009)).

At this point, the Court's analysis of the merits of the parties' claims diverge given the Schwartzmillers' opposing positions during the bench proceedings as well as the Court's findings, including that it was "a straightforward credibility contest which Lisa plainly won because her testimony was credible and William's was not."  (Docket No. 102 at 23).  Hence, the Court will first address the merits vis-à-vis Lisa and then move on to William and the Medical Plan.

As to Lisa, the merits of her case were very strong because she presented credible testimony and supporting evidence demonstrating that she and William formed a valid common law

remarriage approximately five years prior to her being added as a beneficiary under the plan. (Docket No. 102 at 23-27). Such evidence plainly refuted the Medical Plan's theory that she was ineligible for benefits between 1998 and 2012 and the Court's ruling in her favor led to the dismissal of this lawsuit. (*Id*.). Moreover, there is no evidence in the record that Lisa was involved in the applications for medical benefits at all, let alone that she engaged in fraud or misrepresentations in pursuit of those benefits, as the Medical Plan alleged. The case against her has been rightly dismissed, with prejudice. Based on these findings, the fifth *Ursic* factor certainly weighs in Lisa's favor.

For his part, William summarily argues that the dismissal of the lawsuit demonstrates that his position in this litigation was meritorious and further contends that he technically provided accurate information concerning his marital status to the Medical Plan. (*See* Docket No. 132 at 5). However, as the Medical Plan advocates, William opposed the underlying claim that he and Lisa formed a common law remarriage and resulted in the dismissal of this action. As is thoroughly discussed in the Memorandum Opinion, the Court found that William offered incredible testimony during the hearing which was contradicted by other evidence in the record. (Docket No. 102 at 3-4; 23-27). Among other things,

- William's claim that he did not know about the September 1992 divorce and his corresponding testimony that Lisa did not tell him about it were rejected by the Court because he wrote that he was divorced in his benefits application in November of 1992, (Docket No. 102 at 5-6);

- William provided conflicting information to the Medical Plan and Pension Fund concerning his marital status in 2014 as he stated he was divorced in a September pension application which was rejected but later noted he was married to Lisa in both an October medical benefits form and a December pension application, (*id.* at 10-12); and,

- William admitted that he believed he was married when he filled out

20

> the rejected pension application stating he was divorced and did so
> because he wanted higher pension benefits, (*id*. at 11).

All of this evidence, along with William's demeanor and behavior while testifying, led to the inexorable conclusion by the Court that his incredible testimony was offered to buttress his more lucrative pension appeal than his defense of this medical benefits case. (*Id*. at 10-11).

Stated differently, if the Court had accepted William's version of the events including that he was unaware of his divorce to Lisa in 1992 and did not form a common law remarriage with her in October of 1993, he would not have prevailed in this ERISA action because he had effectively admitted that Lisa was not eligible for benefits under the plan. At most, William may have continued to litigate the dispute over reimbursement damages concerning whether the plan permitted recovery of the cost of benefits paid on Lisa's behalf or the COBRA rate of coverage for the months she was on the plan's rolls but ineligible for benefits due to her divorce from William. Since the Court rejected William's testimony on the underlying facts and did not resolve the parties' legal dispute on the amount of reimbursement damages which may have been recoverable in this action, the Court cannot conclude that the fifth *Ursic* factor weighs in his favor.

With respect to the Medical Plan, it declined to present evidence during the common law marriage litigation and instead relied upon William to try to make its case that Lisa was not eligible for benefits under the plan due to the divorce. (*See* Docket No. 102 at 1). Although William's efforts failed, leading to the dismissal of the Medical Plan's ERISA lawsuit seeking reimbursement of benefits extended to Lisa pursuant to the stipulation, the Medical Plan argues that an award of fees is inappropriate because the merits of the ERISA claims were not resolved. (Docket Nos. 123; 134; 147). The Medical Plan adds that the Court should consider what it believes was a reasonable position that it relied upon William's concessions and admissions in its suit against both Schwartzmillers and its alternative theory that Lisa was ineligible for retroactive benefits

under the plan to counter this fee request.  (*Id.*).

For the reasons expressed in the preceding section of this Opinion, the Medical Plan did not act as a fiduciary in pursuing this action and should have recognized the considerable weaknesses of its case much earlier than the Court's issuance of the ruling on the common law marriage issue.  *See* § IV.B.1.a, *supra*.  It appears to the Court that a reasonable, prudent person would have: conducted a sufficient pre-suit investigation obtaining all of the relevant records; accepted the conclusion of the Pension Fund in November of 2017 that Lisa would likely prove a common law marriage; recognized that she was entitled to the medical benefits she was extended from 1998-2012 as William's spouse; and, not even filed this lawsuit.  *See* 29 U.S.C. § 1104(a)(1)(B).  Most troubling to the Court, however, is that the Medical Plan is once again shifting positions, advancing a new theory of its case that Lisa is ineligible for retroactive benefits as William's spouse because insufficient proof of a common law marriage was allegedly presented at the time of her enrollment in 1998.  (Docket Nos. 134; 147).  Having considered the matter, the Court finds that any such arguments fail as untimely, waived, and/or are without merit.

At the outset, this case has been dismissed, with prejudice, and the time to raise new liability theories has long since passed.  To that end, the Medical Plan has not demonstrated "good cause" to amend its complaint to add this new claim more than 2 years beyond the established deadline of December 1, 2018.  *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *see also* Fed. R. Civ. P. 16(b)(4).  Like all litigants, the Medical Plan had the ability to plead its case in the alternative and include this claim.  *See* Fed. R. Civ. P. 8(d)(2). The Medical Plan clearly did not act with diligence to pursue this alternative theory because it was well aware of Lisa's common law marriage defense since at least November 13, 2017 but took no action to raise this new claim previously, including during discovery, the bench proceedings, or,

briefing thereon.  *See Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc.*, No. CV 18-1418, 2019 WL 5394750, at *2 (W.D. Pa. Oct. 22, 2019) (quotations omitted) ("Many courts have recognized that '[w]here ... the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.'").

Any such argument was also waived by the Medical Plan due to its failure to address the same in its opening brief on the instant motions.  *See e.g., Vay v. Huston*, 2016 WL 1408116, at *8 (W.D. Pa. Apr. 11, 2016) (noting that new arguments raised in reply or supplemental briefing are waived and "[a]lthough this Court often holds oral argument and liberally permits supplemental briefing, these procedures should not be construed as the Court granting permission to raise for the first time new issues or arguments at the hearing and through supplemental submissions.").  In any event, the Medical Plan has not cited any authority in a similar circumstance where a court determined that a beneficiary had a valid common law marriage prior to enrolling in a plan and an equitable action seeking reimbursement due to insufficient proof of the marriage at the time of enrollment was successful.  (Docket Nos. 134; 147).  Given same, the Court is persuaded by the Schwartzmillers' counter-argument that the Medical Plan likely waived the contractual condition requiring a notarized statement affirming a common law marriage by accepting the marriage certificate when Lisa was enrolled in 1998.  *See e.g.*, 13 Williston on Contracts § 39:24 (4th ed. 2020) ("it is well settled that a contracting party may unilaterally waive a provision of the contract, including, as a general rule, any condition precedent which has been placed in the contract for that party's benefit.").  Overall, the Court believes that the Medical Plan lacked a viable liability theory following the determination that the Schwartzmillers entered into a valid common law remarriage in October of 1993 and that the parties' agreement to dismiss this case, with prejudice, was

appropriate.[5]

Considering all the facts and circumstances, the Court holds that the fifth *Ursic* factor weighs in favor of awarding fees in Lisa's case but does not support fees in William's case.

### c. The Medical Plan's Ability to Pay the Schwartzmillers' Attorneys' Fees

Next, the Medical Plan admits that it is able to pay the attorneys' fees and costs at issue. (Docket No. 123 at 21).  The Court agrees with the Schwartzmillers that such factor favors an award of fees and costs.

### d. The Deterrent Effect of an Award of Attorney's Fees

"As to the third *Ursic* factor, the Court must determine whether 'it would serve the objectives of ERISA to award counsel fees in an effort to deter conduct of the kind in which [Plaintiff] engaged,' even where the offending behavior 'falls short of bad faith conduct.'" *Atl. Plastic & Hand Surgery, PA*, 2019 WL 4635482, at *4 (quoting *McPherson*, 33 F.3d at 258). "Notably, a 'deterrent effect will be beneficial upon those who contemplate speculative and duplicative litigation on thinly based grounds.'" *Id.* (quoting *Monkelis*, 827 F.2d at 937).

Once again, the Court finds that this factor favors a fee award to Lisa but not to William. While the Court generally agrees with Mr. Klein's assessment that "Plans should not be deterred to bring […] recovery actions for improper coverage provided to members," (Docket No. 124 at ¶ 22), the Court believes that a fee award is necessary to deter the Medical Plan from engaging in the same type of culpable behavior exhibited here in future cases.  To reiterate, the Medical Plan

---

[5]     Since liability has not been established, the Court need not directly address the merits of the Medical Plan's pursuit of restitution damages against the Schwartzmillers at the COBRA rate, as opposed to the amount of benefits paid on Lisa's behalf.  However, the case relied upon by the Medical Plan, i.e., *Board of Trustees of Greater Pennsylvania Carpenters' Medical Plan v. Clouser*, 2020 WL 1508698, at *1-2 (W.D. Pa. Mar. 30, 2020), is distinguishable. Although Judge Bissoon entered a default judgment at the COBRA rate for the 18 months of coverage, she did so after noting that "there is no binding precedent supporting Plaintiff's interpretation of the statute in this Circuit." *Id.* at *2.  In *Clouser*, it was uncontested that Ms. Clouser was initially covered by the plan but wrongly continued to receive coverage after her divorce.  In contrast, Lisa became a beneficiary five years after her common law remarriage to William and was eligible to receive benefits as a common law spouse under the plan.

did not uphold its fiduciary duties to act with reasonable prudence and diligence in pursuing this action because it: failed to conduct a sufficient pre-suit investigation prior to filing its error-riddled initial Complaint; took inconsistent positions with the related Pension Fund on the Schwartzmillers' marital status and Lisa's eligibility as a dependent spouse; pursued its Amended Complaint against Lisa despite knowing that she had a strong defense to this action; and, continued to rely upon William's incredible testimony even after observing the bench proceedings. *See Tomasko*, 357 Fed. App'x 472. Further, the Medical Plan took these actions when it had paid only $2,020.35 in medical benefits on Lisa's behalf causing her to incur significant fees and costs far exceeding that amount to defend this case.

   *e. The Benefit Conferred Upon Members of the Pension Plan as a Whole*

  "The fourth *Ursic* factor 'focuses on the communal benefit to all members of [a] plan,' and generally supports an award of attorney's fees when 'the [plan is required] to reinterpret the plan's provisions or reinstate benefits for all plan members.'" *Atl. Plastic & Hand Surgery, PA*, 2019 WL 4635482, at *4 (quoting *Patterson*, 2018 U.S. Dist. LEXIS 125891, at *5, 2018 WL 3601227) (internal quotation marks and citation omitted). Lisa concedes that this factor does not favor an award of attorneys' fees because the judicial decision in this case related to common law marriages which have been abolished in the Commonwealth of Pennsylvania as of January 2, 2005. (Docket No. 108). Hence, Lisa does not believe that an award of attorney's fees would provide much benefit to the other members of the Medical Plan. (*Id.*). The Medical Plan concurs with her assessment. (Docket No. 123). William takes a different view, insisting, without supporting authority, that other plan members would benefit from an award of fees in this suit. (Docket No. 114).

  Having considered the parties' positions, the Court agrees with Lisa and the Medical Plan

that this factor does not favor an award of attorneys' fees and costs.  *See Atl. Plastic & Hand Surgery, PA*, 2019 WL 4635482, at *4. The judicial decision authored in this case did not interpret the Medical Plan, reinstate benefits for all plan members, or provide much analysis of the ERISA claims which would be helpful to all plan members.  (Docket No. 102).  As noted, the precedential value of the decision on common law remarriage is lessened since Pennsylvania abolished same as of January 2, 2005.  (*Id*.).  Therefore, this factor does not favor an award of fees and costs.

2.  Conclusion

After carefully considering all of the evidence of record, the parties' arguments and the relevant legal standards, the Court holds that only the first and second *Ursic* factors favor an award of attorney's fees in William's case while the remaining factors weigh against his position.  The Court believes that the maxim "he who seeks equity must do equity," is applicable here.  *Freck v. IRS*, 37 F.3d 986, 996 (3d Cir. 1994).  William did not act equitably as he falsely claimed he did not know about his prior divorce leading to this lawsuit and then provided incredible testimony in an unsuccessful effort to prove the Medical Plan's theories that Lisa was neither his wife nor eligible for medical benefits.  He did so because he wanted increased pension benefits.  Hence, it would be inappropriate for the Court to exercise its discretion to require the Medical Plan to pick up the tab for his defense of this case.  Accordingly, William's motion for fees and costs will be denied.

On the other hand, the Court's review of the evidence and the parties' arguments in light of those same legal standards leads to the conclusion that the first, second, third and fifth *Ursic* factors all favor an award of fees in Lisa's case and such factors substantially outweigh the remaining fourth factor which does not support a fee award.  Unlike her husband, Lisa provided credible testimony to the Court and established by clear and convincing evidence both that she and

26

William formed a valid common law remarriage and that she was not involved in any fraud or misrepresentations in obtaining medical benefits to which she was entitled.  The award of attorney's fees and costs should deter the Medical Plan from abandoning its fiduciary duties by bringing such a deficient case against a beneficiary spouse in the future and encourage it to act with the required prudence, diligence and loyalty in other reimbursement matters.  Had the Medical Plan conducted a sufficient pre-suit investigation of its own records and taken the same position as the Pension Fund that Lisa was likely to prove a common law marriage, a reasonably prudent person would not have filed this lawsuit against Lisa.  *Cf. Tomasko*, 357 F. App'x at 478-79 ("a considerable portion of the fees awarded in this case were incurred in connection with the prolonged nature of the litigation" and the "fees [were] incurred as a natural consequence of that behavior [and] are [not] excessive when compared to the value of the underlying judgment.").  For all of these reasons, the Court will exercise its discretion to award fees and costs in Lisa's case.

C.  *Reasonableness of Fees and Costs Claimed by Lisa*

Because the Court has concluded that Lisa is entitled to a fee award, the next step is to resolve the Medical Plan's challenges to the reasonableness of the fees and costs she has claimed. The parties agree that the lodestar method is appropriate, and the Court concurs as the same is consistent with Third Circuit jurisprudence.  *See Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 312 (3d Cir. 2008) ("the District Court's application of the lodestar approach, as opposed to a contingency fee approach, was plainly appropriate.").  "Under the lodestar approach, a court determines the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate. The product of this calculation is a presumptively reasonable fee, but it may still require subsequent adjustment." *Hahnemann Univ. Hosp.*, 514 F.3d at 310 (internal quotation omitted).

An "attorney's reasonable hourly rate is the prevailing rate in a legal market for an attorney of similar experience and skill." [*Dee v. Borough of Dunmore*, 548 Fed. App'x 58, 62 (3d Cir. 2013)]. A court "may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record." *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996). Moreover, a fee applicant bears the burden of "producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997); *Castro v. McCarthy & Jennerich*, No. 11-1832, 2013 WL 335973, at *2, 2013 U.S. Dist. LEXIS 11989, at *6-7 (D.N.J. Jan. 10, 2013) ("The prevailing party bears the burden of proving, through competent evidence, the reasonableness of the hours worked and rates claimed."); *Connor v. Sedgwick Claims Mgmt. Servs.*, No. 09-1140, 2012 WL 6595072, at *3, 2012 U.S. Dist. LEXIS 178474, at *8 (D.N.J. Dec. 18, 2012) ("The party requesting attorneys' fees has the burden of proving that its request is reasonable.") (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

Specifically, a fee applicant's burden "is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *S.D. Manville Bd. Of Educ.*, 989 F. Supp. 649, 656 (D.N.J. 1998); *Apple Corps. v. International Collectors Soc'y*, 25 F. Supp. 2d 480, 492 (D.N.J. 1998) ("The fee applicant's burden may be satisfied by the submission of affidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community.") (citing *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996); *Renna v. County of Union*, No. 11-3328, 2015 WL 93800, at *9, 2015 U.S. Dist. LEXIS 1370, at *23 (D.N.J. Jan 7. 2015). If met, the burden then shifts to the opposing party "to challenge the attorney's hours, hourly rate, and the reasonableness of the product of those numbers." *Dee*, 548 Fed. App'x at 60.

*Atl. Plastic & Hand Surgery, PA*, 2019 WL 4635482, at *6.

The Medical Plan does not contest the rate of $450/hour sought by Carney as part of the fee application.  (Docket Nos. 123 at 24-25; 134).  The Court finds that such hourly rate is sufficiently supported by his curricula vitae, including 50 years of practicing in this area, fee

28

awards in prior cases, some of which exceeded that amount, and the affidavits submitted by local attorneys J. Michael Jarboe, Esq. and Walter P. Forest, Esq. attesting to the reasonableness of the hourly rate as representative of the prevailing rate in the Pittsburgh legal market. (Docket Nos. 109; 110; 111). The Court further notes that the requested rate is significantly less than the $550/hour sought by William's counsel, Stember, which is likewise certified as reasonable by local attorney Timothy O'Brien, Esq. (Docket No. 115; 115-1). The proffered rate is also consistent with fee awards in this District. *See e.g., Geness v. Pennsylvania*, 2020 WL 4350239, at *14 (W.D. Pa. Jul. 29, 2020) (approval of hourly rate of $600/hour for lead attorney in civil rights matter); *Harris v. Auto Systems Centers, Inc.*, 2020 WL 835833, at *2 (W.D. Pa. Feb. 20, 2020) (approval of hourly rate of $400/hour for lead attorney); *Sowers et al. v. Freightcar America, Inc.*, Civ. A. No. 2:07-cv-00201, Docket No. 131 (W.D. Pa. Nov. 3, 2008) (approving rate of $475 for J. Stember, *et al*.). All told, the Court holds that $450/hour is a reasonable hourly rate for the services provided by Carney on Lisa's behalf in this litigation.

Having determined that the reasonableness of the requested hourly rate, the Court moves on to the reasonableness of the hours expended.

> In considering an applicant's request for fees, "hours that were not reasonably expended," including those which are "excessive, redundant or otherwise unnecessary," must be excluded from the calculation of the lodestar, but only if the opposing party raises a specific objection that is sufficient to provide "the fee applicant with notice of the contested portions of the claimed fee." *Butler v. Frett*, No. 99-4367, 2006 WL 1806412, at *7, 2006 U.S. Dist. LEXIS 44468, at *22 (D.N.J. June 29, 2006) (citing *Rode*, 892 F.2d at 1183); *Blakey v. Continental Airlines*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998) ("[T]he party challenging the fee petition must make specific objections to the requested fee."). In the absence of a specific objection, the Third Circuit has instructed that a court "may not sua sponte reduce a fee award from the amount requested in the fee petition." *Freid v. Nat'l Action Fin. Servs.*, No. 10-2870, 2011 WL 6934845, at *8, 2011 U.S. Dist. LEXIS 149668, at *28 n.7 (D.N.J. Dec. 29, 2011) (citing *Bell v. United Princeton Properties*,

*Inc.*, 884 F.2d 713 (3d Cir. 1989)).

*Atl. Plastic & Hand Surgery, PA*, 2019 WL 4635482, at *7.

Here, Lisa seeks fees for 178.65 hours expended by Mr. Carney in defense of the case. (Docket No. 142).  She also seeks to reimbursement of $610.67 in costs advanced in this litigation. (Docket No. 106).  The Medical Plan lodges three separate objections: (1) an unspecified number of hours are allegedly "unallocated between the Medical Plan's complaint and William's claims against the Pension Fund"; (2) time was spent on claims which were not adjudicated; and, (3) duplicative work was performed on the two motions to dismiss.  (Docket No. 123).  Lisa counters that the objections are baseless and Mr. Carney's fees should be paid in full.  (Docket No. 126).

After careful review of the submissions, the Court will exercise its discretion to award the fees and costs claimed by Lisa and overrule the Medical Plan's objections to same.  *See Hahnemann Univ. Hosp.*, 514 F.3d at 310. Initially, the Court again recognizes that Carney has significant experience in ERISA litigation, including prior appearances before this Court in similar matters.  (Docket No. 110).  The supporting time sheets and affidavits are also sufficiently detailed to justify the fees claimed.  (Docket No. 142).  Upon review of same, it is this Court's opinion that Mr. Carney performed high level legal work efficiently on behalf of Lisa and exercised reasonable billing discretion such that the fee petition contains only hours reasonably expended in defense of this case.  *See Hahnemann Univ. Hosp.*, 514 F.3d at 310.  Overall, the fees and costs claimed are commensurate with the type of work performed by attorneys of similar experience in this type of case and will be approved by the Court.  *See id.*

Beyond these findings, the Court notes that the Medical Plan's objections are generally unsupported and without merit.  *See Atl. Plastic & Hand Surgery, PA*, 2019 WL 4635482, at *7 ("Plaintiff presents nothing more than vague and unspecified assertions that are insufficient to

challenge Ashland's total billable hour.").  In this regard, the Medical Plan's objections that hours were unreasonably expended on claims which were not adjudicated in this matter and on the Pension Fund case do not specifically challenge any particular services claimed on the detailed time sheets submitted by Lisa.  (*See* Docket No. 123).  The objections cannot be sustained on that basis alone.  *See United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211 (3d Cir. 2000) ("it is well settled in this circuit that in calculating the 'lodestar,' or initial fee calculation requiring the court to multiply a reasonable hourly fee by the reasonable amount of hours worked, the district court may not award less in fees than requested unless the opposing party makes specific objections to the fee request."); *see also Tomasko*, 357 F. App'x at 479 ("we find that the specific objections that [appellee] raised for the first time at oral argument in the District Court have been waived.").  Additionally, it is clear to the Court that Lisa was not a party to William's suit against the Pension Fund and the time sheets reflect that Mr. Carney's work focused on the defense of this matter.  (Docket No. 142).  The fact that the common law marriage dispute was relevant to both cases does not undermine the basis for an award of fees in this action (*Id.*).

With respect to the alleged duplicative motions to dismiss, the Medical Plan lists all of the time entries for motions practice, brief writing, research and the like between January 17, 2018 and July 3, 2018 but does not suggest which specific entries should be stricken.  *Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d at 211; *Tomasko*, 357 F. App'x at 479.  Insofar as the Medical Plan suggests that the full amount of 37 hours attributable to these services rendered in that timeframe should be reduced because the motions were denied, the Court disagrees and finds that all such fees are compensable.  *See Hahnemann Univ. Hosp.*, 514 F.3d at 310.  As is explained in detail above, the Medical Plan submitted two very different complaints, with the initial motions

to dismiss having led it to search its own records and discover that: William stated he was divorced in his 1992 benefits application adding his son as a beneficiary; Lisa did not even become a beneficiary of the plan until 1998; and, that only $2,020.35 was paid in claims on her behalf. (Docket Nos. 1; 35; 36).  The Amended Complaint was also ordered by the Court because the wrong version of the plan was attached to the initial pleading.  (*Id*.).  All told, the Court believes that the two rounds of motions to dismiss were necessary to address the shifting theories and allegations pursued by the Medical Plan.

The Court having found that the fee petition is sufficiently supported such that Lisa has claimed reasonable attorney's fees and costs under the lodestar method, the Court will exercise its discretion and grant Lisa's claim for attorney's fees and costs in the amounts claimed.  *See Hahnemann Univ. Hosp.*, 514 F.3d at 310.

V.      CONCLUSION

Based on the foregoing, Lisa's motions seeking attorney's fees and costs [107] [127] [142] are GRANTED and William's motion seeking attorney's fees and costs [113] is DENIED.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: February 22, 2021

cc/ecf: All counsel of record.